FILED

2017 Feb-14  AM 11:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **ANNE HUIGENS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | Civil Action Number |
| ) | **4:16-cv-00600-AKK** |
| **CAROLYN W. COLVIN, ACTING** ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Anne Huigens brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standards and that his decision — which has become the decision of the Commissioner — is supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

## I.    PROCEDURAL HISTORY

Huigens filed her application for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income on July 14, 2010, alleging a disability onset date of December 2, 2009 due to arthritis, depression, restless leg syndrome, anxiety, and memory loss. (R. 188, 339, 353). Huigens later claimed disability

due to fibromyalgia, as well.  (R. 112).  After the SSA denied her application, Huigens requested a hearing before an ALJ.  (R. 254).  The ALJ subsequently denied Huigens's claim, (R. 185, 199), and the Appeals Council vacated the hearing decision and remanded the case for the ALJ to clarify his residual functional capacity finding regarding "whether [Huigens] is limited to light work or sedentary work," (R. 204–05).  After holding another hearing, the ALJ again denied Huigens's claim, (R. 78, 98), and the Appeals Council issued a partially favorable decision, awarding SSI benefits with an onset date of June 5, 2013, the date Huigens turned fifty-five.  (R. 7).  The Appeals Council denied review of the SSDI claim, however, (R. 13–19), rendering the ALJ's opinion the final decision of the Commissioner.  Huigens then filed this action pursuant to § 405(g).  (Doc. 1.).

## II.   STANDARD OF REVIEW

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 791 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## III.   STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 416(i)(1)(A). A physical or mental

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five-step analysis.  20 C.F.R. §§ 404.1520(a)–(f).  Specifically, the Commissioner must determine, in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"  *Id.* at 1030 (citing 20 C.F.R. §§ 416.920(a)–(f)).  "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

# IV.    The ALJ's Decision[1]

In performing the five-step analysis, the ALJ determined that Huigens met the criteria for Step One, because she had not engaged in any substantial gainful activity since her alleged onset date in December 2009.  (R. 84).  Next, the ALJ acknowledged that Huigens's impairments of "osteoarthritis, chronic pain syndrome, depression, bipolar disorder, and generalized anxiety disorder" met the requirements of Step Two.  (*Id.*).  The ALJ then proceeded to the next step and found that Huigens did not satisfy Step Three, because she did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments included in 20 C.F.R. Part 404, Subpart P, Appendix 1."  (R. 86) (internal citations omitted).  In this step, the ALJ acknowledged Huigens's complaints of joint pain, osteoarthritis, and spine issues, but remarked that Huigens's treatment notes have never reported "difficulty ambulating on a persistent basis," and that several treatment notes have in fact reported a "moderate activity level." (R. 86–87).  Moreover, while acknowledging Huigens's depression, bipolar disorder, and anxiety, the ALJ concluded that, "[b]ecause [Huigens's] mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation,

---

[1] This section details the ALJ's 2014 decision, which incorporated the information the Appeals Council directed the ALJ to clarify on remand.

each of extended duration, the 'paragraph B' criteria[2] are not satisfied." (R. 88) (footnote added). Rather, Huigens has only moderate limitations in her activities of daily living, social functioning, and concentration, persistence, or pace. (R. 87–88, 520). Finally, the ALJ noted that "no examining or treating medical source has reported that [Huigens] has an impairment that medically equals the criteria of a listed impairment." (R. 88).

Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, he proceeded to Step Four, where he determined that, at her date last insured, Huigens had the residual functional capacity ("RFC") to "perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except [Huigens] requires the option to change postures from seated to standing or walking, not on a mechanical basis but as frequently as thirty minutes." (R. 89). The ALJ articulated further restrictions, specifically, that Huigens can "carry out one to two step instructions," "maintain a regular work schedule by compliance with appropriate mental health treatment," "handle ordinary work pressures but not excessive amounts of work pressure," and "adapt to change that is infrequent." (*Id.*). The ALJ also found that Huigens's "contact with the public should be non-intensive." (*Id.*). In light of Huigens's RFC and the

---

2 These criteria include "marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration." (R. 87). *See Bellew v. Acting Comm'r of Soc. Sec.*, 605 F. App'x 917, 924 (11th Cir. 2015) (citations omitted).

testimony of a vocational expert ("VE"), the ALJ determined that Huigens was unable to perform any of her past relevant work. (R. 96). Lastly, in Step Five, the ALJ considered Huigens's age, education, work experience, and RFC, and determined that "there are jobs that exist in significant numbers in the national economy that [Huigens] can perform." (R. 97). Therefore, the ALJ found that Huigens "has not been under a disability, as defined in the Social Security Act, from December 2, 2009." (R. 98).

## V.     ANALYSIS

Huigens raises four contentions of error. For the reasons below, the court rejects each contention and affirms the ALJ's decision.

### A. The ALJ did not err by purportedly failing to assess the intensity and persistence of Huigens's symptoms pursuant to Social Security Ruling 16-3p

Huigens contends that the ALJ's decision "failed to assess the intensity and persistence of [her] symptoms pursuant to Social Security Ruling 16-3p which became effective 3/28/16" and which, Huigens claims, applies retroactively. (Doc. 11 at 1). For these reasons, Huigens has asked this court to remand to the ALJ for further proceedings consistent with this ruling. (*See* doc. 11). SSR 16-3p announced that the SSA would depart from "assess[ing] the 'credibility' of an applicant's statements," and instead "focus on the 'intensity and persistence of [the applicant's] symptoms.'" *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (citing

81 Fed. Reg. 14166, 14167).  Huigens fails to cite any binding authority to support her contention that SSR 16-3p applies retroactively and instead cites *Cole*, a Seventh Circuit case which does not endorse (or otherwise discuss) retroactive application, and *Mendenhall v. Colvin*, No. 3:14-cv-3389, 2016 U.S. Dist. LEXIS 105404 (C.D. Ill. Aug. 9, 2016), a non-binding out-of-circuit district court case which found that retroactive application was "appropriate," *id.* at *10.  The court declines to follow *Mendenhall*, especially where, as here, a retroactive application would not help Huigens.  In other words, even assuming that the SSA intended SSR 16-3p to apply retroactively, the ALJ's decision shows that he evaluated Huigens's symptoms, and not her overall credibility, by reviewing her allegations, medical records, treatment notes, and activities of daily living.  (*See* R. 84–96).  For these reasons, the court concludes that remand is not appropriate.

### B. The ALJ did not err in giving weight to the medical opinions in the record

Huigens next contends that the ALJ erred by failing to afford proper weight to the opinions of her treating physicians, Dr. Muhammad Tariq and Dr. Larry Scarborough.  (Doc. 12 at 42).  The ALJ is required to weigh all the medical evidence in the record, and "to state with particularity the weight he gave to different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).  Moreover, the ALJ must "clearly articulate the reasons for giving less weight to the testimony of a treating physician." *Moore v.*

*Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). "The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citations omitted). "Good cause" for refusing to give considerable weight to a treating physician's opinion exists where, among other examples, the physician's opinion was not bolstered by the evidence, or was inconsistent with his own treatment records. *Id.* For the reasons stated below, the court finds that good cause existed for the ALJ to give less weight to the opinions of the two treating physicians.

First, as it relates to Dr. Tariq, he opined that Huigens could sit for one hour at a time, stand for less than thirty minutes at a time, walk for less than fifteen minutes at a time, would need to lie down, sleep, or sit with her legs propped above waist level for two hours in an eight-hour day, and would be able to perform a task for one hour before needing a break. (R. 647). The ALJ afforded little weight to Dr. Tariq's opinion, in part because he found Dr. Tariq's opinion "inconsistent with [Dr. Tariq's] treatment notes, which do not report symptoms that would support the serious medical restrictions he listed in his Physical Capacities form." (R. 95). The ALJ further noted that "the medical evidence of record does not support such severe symptoms, as [Huigens] is essentially just given medication for her problems," and Dr. Tariq "has never persistently suggested surgery or any

9

other such measure for her impairments." (R. 95–96).[3] These findings are supported by the record. (*See, e.g.*, R. 646 (Dr. Tariq notes Huigens's "General Osteoarthritis," "Myalgia and Mysotis," "Generalized Anxiety," and "Chronic Pain Syndrome," and states that Huigens should "[c]ontinue present care," which consisted solely of medications)).

The ALJ also afforded little weight to the opinion Dr. Scarborough expressed in a Physical Capacities Form. According to Dr. Scarborough, Huigens could sit for eight hours at a time, stand and walk for fifteen minutes each at a time, would need to lie down, sleep, or sit with her legs propped above waist level for one hour in an eight-hour day, could occasionally lift up to ten pounds, and could perform a task for thirty minutes before needing a break. (R. 677). The ALJ provided multiple reasons for rejecting Dr. Scarborough's opinion. First, the ALJ noted that the opinion was "wholly inconsistent with [Huigens's] treatment notes, which [did] not report symptoms sufficient to support such limitations." (R. 96). Second, the ALJ pointed out that Dr. Scarborough's opinion was "not consistent with his *own* treatment notes which did diagnose joint pain, but are grossly less extensive than [would indicate] a December 2, 2009 onset, and do not contain any medical restriction, referral to an orthopedic or other specialist." (*Id.*) (emphasis

---

[3] Huigens counters that medical records dated May 29, 2013 "indicate that an MRI was mentioned, and [Huigens] stated that she could not afford it, which indicates that the doctors at Quality of Life did consider [her] joint pain serious and did suggest further diagnostic testing." (Doc. 12 at 26). However, this does not rebut the ALJ's conclusion that Dr. Tariq did not "persistently" suggest measures other than medication.

added).   In referencing Dr. Scarborough's own treatment notes, the ALJ added that, "despite a statement of arthritis, [Dr. Scarborough's notes] contain laboratory results of a sedimentation rate of 2, which is well within the stated allowable range of 30."   (*Id.*).   Finally, the ALJ noted that the medical records reflected that Huigens's conditions were managed conservatively with medication and that Dr. Scarborough had not recommended that Huigens undergo "more invasive or complex treatment."   (*Id.*).   (*See, e.g.*, R. 652 (Dr. Scarborough notes Huigens's "Edema," "Joint Pain," "Abnormal Weight Gain," and "Sinusitis," and prescribes medications, "labs," and a "low sodium" diet)).   The substantial evidence supports the ALJ's findings related to Dr. Scarborough.

In addition to the specific inconsistencies between Dr. Tariq's and Dr. Scarborough's opinions and their treatment notes, the ALJ noted generally that Huigens's medical records show only mildly- to moderately-reduced range of motion and/or mobility, (R. 91 (citing R. 542, 561, 566, 570, 584, 589, 656)), and a moderate activity level, (R. 91 (citing 541, 564, 568, 588, 665, 693)). Additionally, several of Huigens's treatment notes documented 0/10 pain scores, (R. 546, 550, 553, 557, 570, 584, 589), and, on other occasions, reported that her pain was relieved by elevation, medication, and mobility, (R. 568, 587, 599). Furthermore, Huigens's x-rays showed only "slight" or "some mild" degenerative joint disease of the bilateral elbows.  (R. 575, 582).

Dr. Tariq's and Dr. Scarborough's opinions were also inconsistent with the consultative examinations.  For example, an August 2010 consultative examination by Dr. Ashley Thomas showed that Huigens was "independent in activities of daily living [and ambulation]," had a normal gait, had negative straight leg raising, and generally exhibited full to only-slightly-decreased range of motion of most joints. (R. 501, 503).  An October 2013 consultative examination by Dr. Sathyan Iyer reported some decreased range of motion, but also reported normal gait, full range of motion of the elbows, wrists, and ankles, full abduction, adduction, and rotation of the hips, negative straight leg raising, normal grip strength and opposition functions, and normal muscle power of the upper and lower extremities.  (R. 627–29).  Dr. Iyers further reported that Huigens had no limitation in sitting or standing. (R. 630).[4]

Based on the court's review of the record, it is clear that the ALJ considered the full medical history and, in making his determination of Huigens's RFC, properly and comprehensively analyzed the medical evidence as a whole. Accordingly, good cause existed for the ALJ to give less weight to the opinions of

_____

[4] The ALJ stated that he afforded little weight to Dr. Iyer's opinions due to internal inconsistencies in Dr. Iyer's reports.  Specifically, while Dr. Iyer "opined after his examination of [Huigens] that, '[s]he does not have limitation of functions involving sitting, standing, handling, hearing, or speaking,'" in his Medical Source Opinion Form, Dr. Iyer opined that Huigens "could sit a total of 4 hours in an eight-hour day, and could stand only two hours in an eight-hour day."  (R. 95).  The ALJ also stated that Dr. Iyer's diagnosis of "possible" degenerative joint disease and "history of" fibromyalgia, anxiety, and depression were "vague and ill defined."  (Id.).

these treating physicians.  As such, the court concludes that the ALJ properly considered the medical evidence in determining Huigens's ability to work in spite of her impairments, and made "clear the weight accorded to each item of evidence and the reasons for those decisions . . . ." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 764 (11th Cir. 2014).

### C. The ALJ did not err by purportedly failing to consider Huigens's fibromyalgia

Huigens next contends that the ALJ failed to follow the "slight abnormality" standard in finding that her fibromyalgia is non-severe, and failed to otherwise consider her fibromyalgia.  (Doc. 12 at 28–29).  The Commissioner contends that because the ALJ found in Huigens's favor at Step Two, any error at that step is not reversible.  (Doc. 16 at 19).  The court agrees.  *See Hearn v. Comm'r, SSA*, 619 F. App'x 892, 895 (11th Cir. 2015) ("Any error at step two was harmless because the ALJ found in [the claimant's] favor as to impairment, and the ALJ properly noted that he considered [the claimant's] impairments in the later steps.") (citations omitted).

As to Huigens's contention that the ALJ failed to follow the "slight abnormality" standard, (doc. 12 at 29–30; *see* 20 C.F.R. § 416.924(c) (an impairment must be more than "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitation")), the ALJ's finding that Huigens's fibromyalgia is not "severe" is supported by the absence of

specific documentation in Huigens's medical records.  The only evidence Huigens cites to support her contention that her fibromyalgia constitutes more than a "slight abnormality" is medical records that:   list "joint pain" as one of her "chief complaints," (*see* doc. 12 at 30–31 (citing R. 587–90, 595–98, 599, 619–22, 654–57, 658, 659–63)); reference "fibromyalgia" without explanation, (*see* doc. 12 at 30–31 (citing R. 650)); or merely recite that she was "diagnosed to have fibromyalgia in 2012," (*see* doc. 12 at 30–31 (citing R. 627)).   In light of this vague and underdeveloped evidence, the ALJ did not err in failing to list fibromyalgia as a severe impairment.  *See, e.g.*, *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (affirming ALJ's finding that an impairment was not severe where substantial medical evidence showed that the claimant "manifested few symptoms of the disease").

Finally, Huigens's reliance on the assessment of Dr. Daniel Prince, a non-practicing and unlicensed physician, is misplaced.  As an initial matter, Dr. Prince is not an acceptable medical source.  *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (acceptable medical sources include *licensed* physicians and psychologists) (emphasis added).  Moreover, pursuant to SSR 12-2p, a finding that a claimant's fibromyalgia constitutes a medically determinable impairment requires evidence of all of the following:  (1) a history of widespread pain; (2) at least eleven positive tender points, or the repeated manifestation of at least six fibromyalgia symptoms;

and (3) evidence that other disorders that could cause the symptoms or signs were excluded.  *See* 2012 WL 3104869 (July 25, 2012).[5]  Dr. Prince's assessment did not comply with the foregoing requirements.  (R. 85–86 (citing R. 601–03)).[6] Aside from Dr. Prince, only Dr. Tariq indicated the presence of tender points, and Dr. Tariq failed to quantify the tender points.  (*See* R. 621).

Where, as here, the ALJ discussed Huigens's fibromyalgia, and considered the medical record as a whole, the ALJ did not err in concluding that Huigens's fibromyalgia was not severe.

### D. The Appeals Council did not err in applying the age criteria of the grids

Lastly, Huigens contends that the Appeals Council erred in "mechanically applying the age criteria of the grids so as to deprive [her] of SSDI benefits at age 54 and a half by finding [that she] became disabled on 6/5/13, the date [she] turned

---

[5] *See also Hennes v. Comm'r of SSA*, 130 F. App'x 343, 344 n.1 (11th Cir. 2005) (citing STEDMAN'S MEDICAL DICTIONARY 535) ("Diagnostic criteria [for fibromyalgia] include 'pain on both sides of the body, both above and below the waist, as well as in an axial distribution . . . [and] point tenderness in at least 11 or 18 specified sites.'").

[6] The ALJ observed that

Dr. Prince did not provide evidence that other disorders that could cause the symptoms or signs were excluded, and did not note any consideration of the claimant's osteoarthritis.  Moreover, Dr. Prince did report that he was not a practicing physician, but failed to report that he had allowed his license to practice medicine to expire by December 31, 2011, and as such, per SSR 06-03p, his opinions regarding the existence of fibromyalgia are not entitled to any weight, as they are reported by an unlicensed physician (Exhibit 9F).

R. 86 (citing R. 602).

55[,] when [she] was last insured on 12/31/12, seven months before [she] turned

55." Doc. 12 at 31.  This argument is unavailing.

With respect to a claimant's age, the Regulations provide three categories:

"Younger person" (under age fifty), "Person closely approaching advanced age"

(age fifty to fifty-four), and "Person of advanced age" (age fifty-five or older).  20

C.F.R. §§ 404.1563(c)–(e).  The Regulations provide for the following application

of these categories:

> When we make a finding about your ability to do other work under §
> 404.1520(f)(1), we will use . . . each of the age categories that applies
> to you during the period for which we must determine if you are
> disabled.  We will not apply the age categories mechanically in a
> borderline situation.  If you are within *a few days to a few months* of
> reaching an older age category, and using the older age category
> would result in a determination or decision that you are disabled, we
> will consider whether to use the older age category after evaluating
> the overall impact of all the factors of your case.

20 C.F.R. §§ 404.1563(b), 416.963(b) (emphasis added).  Here, Huigens was five

months shy of her fifty-fifth birthday as of her date last insured (*see* R. 175, 339),

so it is not clear that the flexibility described above would apply under any

circumstances.  Moreover, the SSA's Hearings, Appeals, and Litigation Law

Manual  ("HALLEX") states that, "[a]bsent a showing of additional adversity(ies)

justifying the use of the higher age category, the adjudicator will use the claimant's

chronological age — even when the time period is only a few days."  HALLEX II-

5-3-2.  Here, Huigens had no additional adversities.[7]  To the contrary, Huigens has a twelfth-grade education, speaks English, enjoys reading, and has past relevant work that is semi-skilled/skilled in nature.   (R. 123–24, 352, 354, 383, 522).  Moreover, the vocational experts at both of Huigens's hearings testified that Huigens's past relevant work involved skills that would transfer to sedentary work.  (R. 124, 164–65).  For all these reasons, the court finds that the Appeals Council did not err in applying Huigens's chronological age.

## VI.   CONCLUSION

Based on the foregoing, the court concludes that the ALJ's determination that Huigens is not disabled and has the RFC to perform light work is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination.  Therefore, the Commissioner's final decision is **AFFIRMED**.  The court will enter a separate order in accordance with this Memorandum Opinion.

**DONE** the 14th day of February, 2017.



**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[7] *See* Program Operations Manual System:  DI 25001.001(B)(2) (examples of additional vocational adversities include reduced hearing ability, limited education, illiteracy, inability to communicate in English, no past work experience, and work in an isolated industry).